## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**QBE SEGUROS**,

     Plaintiff,

     v.

**CARLOS MORALES-VAZQUEZ**,

     Defendant.

Civil No. 15-2091 (BJM)

## OPINION AND ORDER

QBE Seguros ("QBE") brought this action under the court's admiralty jurisdiction against Carlos Morales-Vazquez ("Morales"), seeking a judgment declaring that Morales's marine insurance policy is void *ab initio*, that Morales breached a "warranty of truthfulness," or that the policy does not cover all of Morales's claimed losses. Docket No. 14 ("Compl."). Morales counterclaimed, alleging breach of contract and entitlement to consequential damages. Docket No. 15. Morales moved for judgment on the pleadings, and to dismiss the complaint for failure to state a claim, Docket Nos. 24, 30, and QBE opposed. Docket Nos. 27, 32. The case is before me on consent of the parties. Docket No. 47.

For the reasons set forth below, Morales's motions are **DENIED**.

## APPLICABLE STANDARDS

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). The plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary" for the action. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). In evaluating a motion to dismiss, the court first discards any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The remaining "[n]on-conclusory factual

allegations" are fully credited, "even if seemingly incredible." *Ocasio-Hernández*, 640 F.3d at 12. The court engages in no fact-finding, and does not "forecast a plaintiff's likelihood of success on the merits." *Ocasio-Hernández*, 640 F.3d at 13. Rather, it presumes that the facts are as properly alleged by the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Taken together, the facts pleaded must "state a plausible, not a merely conceivable, case for relief." *Ocasio-Hernández*, 640 F.3d at 12.

Federal Rule of Civil Procedure 12(c), on the other hand, provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The pleadings generally include the complaint and the answer, unless the court orders a reply to the answer. *See* Fed. R. Civ. P. 7(a). The standard under Rule 12(c) "is analogous to that of a motion to dismiss" under Rule 12(b)(6). *Viera-Marcano v. Ramirez-Sanchez*, 224 F. Supp. 2d 397, 399–400 (D.P.R. 2002); *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54–55 (1st Cir. 2006) ("the two motions are ordinarily accorded much the same treatment," except for the "modest difference" that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole.").

## BACKGROUND

QBE is a Puerto Rico corporation authorized by the Puerto Rico Insurance Commissioner's Office to sell ocean marine insurance. Compl. ¶ 4. In March 2014, Morales applied to have QBE insure his 48' yacht. *Id.* ¶¶ 6, 7. The application form states that the "statements and answers provided [in the application] are warranted by [the applicant] to be true and correct." *Id.* ¶ 26. Based on the information contained in the application, QBE issued a marine insurance policy that ran from March 2014 to March 2015. *Id.* ¶¶ 6–9. The marine insurance policy states that the "information provided in the Application is warranted by [the insured] to be true and correct in all respects." *Id.* ¶ 25. The policy adds that it "shall be void and without effect" if the insured made a false

statement or representation with respect to the insurance, or concealed or misrepresented any material fact or circumstance relating to the insurance. *Id.* ¶ 25.

In October 2014, the 48' yacht sustained damages as a result of a fire, Morales informed QBE of the damage, and QBE immediately began investigating the claim. *Id.* ¶¶ 10–12. QBE appointed Pablo Rios ("Rios"), an independent contractor and licensed adjustor, to investigate and adjust Morales's insurance claim. *Id.* ¶ 13. Rios hired Edgardo Jimenez ("Jimenez"), a marine surveyor, to assess the physical condition of the yacht and cost of repairs. *Id.* ¶ 14. While investigating Morales's insurance claims, QBE made two offers that Morales declined to accept. *Id.* ¶ 15.

In July 2015, Rios informed QBE that around 2010 MAPFRE, a different insurance company, had adjusted a yacht insurance claim for Morales. *Id.* ¶ 16. When questioned by QBE about this incident a month later, Morales stated under oath that around 2010 he owned a 40' yacht and grounded the vessel while no one else was aboard. *Id.* ¶ 17. The incident in 2010 resulted in a total loss of the yacht. *Id.* ¶ 17. In his application for insurance of the 48' yacht, Morales did not disclose the 2010 incident in response to a question asking whether he had any accidents or losses in connection with a vessel he owned, operated, or controlled. *Id.* ¶¶ 18–20. QBE's insurance application also asked Morales to detail his boating experience by listing the boats he owned or operated. *Id.* ¶ 21. When questioned by QBE, Morales admitted under oath that he owned five vessels not included in his 2014 insurance application for the 48' yacht. *Id.* ¶ 17, 21–22.

## DISCUSSION

Morales contends that judgment on the pleadings should be granted in light of the passage of the United Kingdom's Insurance Act of 2015 ("U.K. Insurance Act"), which abolished in the United Kingdom the doctrine of utmost good faith (also known as the

*uberrimae fidei* doctrine).[1] Docket No. 24. Morales also argues that the allegations in the amended complaint fail to state a claim. Docket No. 30. QBE maintains that *uberrimae fidei* is an entrenched rule of federal maritime law which should not be altered, that the complaint sufficiently alleges a violation of this doctrine, and that the complaint adequately alleges a breach of "the warranty of truthfulness." Docket Nos. 27, 32.

## I.     Utmost Good Faith

"*Uberrimae fidei*" roughly means "of the utmost good faith." *Commercial Union Ins. Co. v. Pesante*, 459 F.3d 34, 37 (1st Cir. 2006) (quoting *Grande v. St. Paul Fire & Marine Ins. Co.*, 436 F.3d 277, 282 (1st Cir. 2006)). The *uberrimae fidei* doctrine requires the insured "to disclose to the insurer all known circumstances that materially affect the insurer's risk." *Windsor Mount Joy Mut. Ins. Co. v. Giragosian*, 57 F.3d 50, 54 (1st Cir. 1995). Under the doctrine, "when the marine insured fails to disclose to the marine insurer all circumstances known to it and unknown to the insurer which 'materially affect the insurer's risk,' the insurer may void the marine insurance policy at its option." *Catlin at Lloyd's v. San Juan Towing & Marine*, 778 F.3d 69, 83 (1st Cir. 2015) (quoting *Giragosian*, 57 F.3d at 55). Put another way, "the policy becomes voidable"—meaning that the marine insurance "contract is valid until being voided at the election of the insurer."[2] *Catlin*, 778 F.3d at 83 & 83 n.19; *see also Stipcich v. Metro. Life Ins. Co.*, 277 U.S. 311, 316 (1928).

The First Circuit recently joined the view of most circuit courts in adopting the doctrine of utmost good faith, "ruling without further equivocation that the doctrine of *uberrimae fidei* is an established rule of maritime law in this Circuit." *Catlin*, 778 F.3d at

---

[1] The U.K. Insurance Act provides that "[a]ny rule of law permitting a party to a contract of insurance to avoid the contract on the ground that the utmost good faith has not been observed by the other party is abolished." Insurance Act of 2015, *Good Faith & Contracting Out*, Ch. 4, Pt. 5, § 14(1) at 7, *available at* Docket No. 24-2 at 7; *see also* Attilio M. Costabel, *The UK Insurance Act 2015: A Restatement of Marine Insurance Law*, 27 St. Thomas L. Rev. 133, 147, 159–60 (2015) ("The Insurance Act 2015 changes the substance and the terminology of insurance at large and of marine insurance in particular.").

[2] When the *uberrimae fidei* doctrine has been violated, the contract is *not* void *ab initio*, as suggested by QBE, because that phrase means "there was never an enforceable contract to begin with." *Catlin*, 778 F.3d at 83 n.19 (citing Black's Law Dictionary 1805 (10th ed. 2014)).

80–81 & 80 n.13 (1st Cir. 2015) (citing *N.Y. Marine & Gen. Ins. Co. v. Cont'l Cement Co., LLC*, 761 F.3d 830, 839 (8th Cir. 2014); *AGF Marine Aviation & Transp. v. Cassin*, 544 F.3d 255, 263 (3d Cir. 2008); *Certain Underwriters at Lloyd's, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 650–54 (9th Cir. 2008); *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000); *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 870 (2d Cir. 1985)). *But see Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 889 (5th Cir. 1991) (*uberrimae fidei* is "not entrenched federal precedent.").[3]

Notwithstanding the above, Morales invites the court to deviate from established federal law. In essence, his argument has three parts. First, he highlights that the U.K. Insurance Act (which was enacted a few days after *Catlin*) amended the U.K. Marine Insurance Act of 1906 in order to abolish the *uberrimae fidei* doctrine in the United Kingdom. *See* Costabel, *The UK Insurance Act 2015*, *supra*, at 147, 159–60. Second, he posits that the Supreme Court has instructed federal courts to adopt "uniform and harmonious application[s] of American and English marine insurance law." Docket No. 24 at 15. Third, he contends that federal courts must "follow the lead" and abolish the *uberrimae fidei* doctrine from American maritime law. This court declines Morales's invitation to diverge from entrenched federal law, and three reasons militate in favor of the court's refusal to sail against the wind.

As an initial matter, *uberrimae fidei* has been recognized as established federal law in this Circuit, and the *Catlin* court was quite clear that this is the rule in this Circuit "without further equivocation." *Catlin*, 778 F.3d at 80–81. And Morales's call for the abrogation of the doctrine from American jurisprudence faces an uphill battle from the outset because, as one of the leading commentators has explained, "'no rule of marine insurance is better established tha[n] the utmost good faith rule.'" *Inlet Fisheries Inc.*, 518

---

[3] The *Catlin* court noted that the Fifth Circuit "is alone in holding that" the doctrine of utmost good faith is not established federal law, and that the Fifth Circuit's view has been "heavily criticized." *Catlin*, 778 F.3d at 80 n.13.

F.3d at 653–54 (alteration in original) (quoting Thomas J. Schoenbaum, *The Duty of Utmost Good Faith in Marine Insurance Law: A Comparative Analysis of American and English Law*, 29 J. Mar. L. & Com. 1, 11 (1998)). Indeed, when the First Circuit recently adopted the *uberrimae fidei* doctrine, it acknowledged the Supreme Court's admonition in *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 316 (1955), "not to create new admiralty rules that govern marine insurance policies." *Catlin*, 778 F.3d at 81 n.14. The *Catlin* court reasoned, though, that *uberrimae fidei* "is a judicially created admiralty rule that substantially predates *Wilburn Boat Co.* and has been reapplied time and time again even after the *Wilburn Boat Co.* decision." *Catlin*, 778 F.3d at 81 n.14. Thus, even if it is true that the tide may turn someday with respect to the soundness of the long-standing *uberrimae fidei* doctrine, this court is bound by *Catlin*'s holding unless and until instructed otherwise by the First Circuit or the Supreme Court.

Second, even if Morales's argument were indulged, the argument lacks merit because it flows from a rickety premise. At its core, Morales's argument depends on the proposition that the Supreme Court has *commanded* federal courts to follow in step with the latest developments of English marine insurance law so as to ensure uniformity in the marine insurance market. While it "is true that [the Supreme Court] and other American courts have emphasized the *desirability* of uniformity in decisions here and in England in interpretation and enforcement of marine insurance contracts," the Supreme Court made clear that "this does not mean that American courts *must* follow House of Lords' decisions automatically." *Standard Oil Co. of N.J. v. United States*, 340 U.S. 54, 59 (1950) (emphases added) (Supreme Court rejected arguments that "(1) we are bound by certain decisions in the House of Lords and (2) these opinions have announced a rule-of-thumb construction of" a particular phrase at issue in *Standard Oil*). Indeed, the Supreme Court has announced that "[a]ctually our practice is no more than to accord respect to established doctrines of English maritime law." *Id.* at 59 & 59 n.11 (citing *Aetna Ins. Co. v. United Fruit Co.*, 304 U.S. 430, 438 (1938) (Court rejected rule adopted by English court where its reasoning

conflicted "with established principles of maritime insurance law")); *see also Calmar S.S. Corp. v. Scott*, 345 U.S. 427, 443 (1953) (English case cited by district court, which arguably supported the lower court's decision, was "*persuasive authority*, since '(t)here are special reasons for keeping in harmony with the marine insurance laws of England," but the Court was "not required to accept the broad ground on which the District Court rested") (emphasis added) (quoting *Queen Ins. Co. of Am. v. Globe & Rutgers Fire Ins. Co.*, 263 U.S. 487, 493 (1924)).

To be sure, one of the leading commentators has previously noted that "[b]ecause the marine insurance industry is international in scope, disharmony on such a key issue as utmost good faith is undesirable." Schoenbaum, *The Duty of Utmost Good Faith in Marine Insurance Law*, *supra*, at 13–14. Yet, divergence in American and English law is not as new as Morales suggests, for one of the leading commentators noted almost 20 years ago that "a serious divergence has developed between American and English marine insurance law over the issue of utmost good faith." *Id.* at 14. While the recent enactment of the U.K. Insurance Act may add further divergence between English and American insurance law, and may counsel Congress to enact legislation to bridge the divide, Supreme Court precedent does not *mandate*, as Morales suggests, that federal courts follow in step with every iteration of English marine insurance law.

Third, while Morales underscores that the U.K. Insurance Act was enacted in February 2015, a few days after *Catlin* was decided, to suggest that the continued vitality of *uberrimae fidei* is questionable, recent decisions do not evince a sea change in the well-established, long-standing *uberrimae fidei* doctrine. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 634 (2d Cir. 2016) (citing *Catlin*, 778 F.3d at 83); *Gamez v. Ace Am. Ins. Co.*, 638 F. App'x 850, 854 n.8 (11th Cir. 2016); *St. Paul Fire & Marine Ins. Co. v. Abhe & Svoboda, Inc.*, 798 F.3d 715, 719 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 1496 (2016); *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1304 (11th Cir. 2015). In *Catlin*, among one of many reasons counseling the adoption of the long-standing

doctrine in this Circuit, the First Circuit noted that others had "recently reaffirmed the vitality of *uberrimae fidei* within their respective jurisdictions." *Catlin*, 778 F.3d at 82. Because recent circuit court cases continue to apply *uberrimae fidei*, and because independent research has not revealed any recent authority to the contrary, I find inadequate support for Morales's position. Thus, the motion for judgment on the pleadings is denied.[4]

## II.    Sufficiency of the Allegations

The *uberrimae fidei* doctrine requires the insured to disclose to "the marine insurer all circumstances known to it and unknown to the insurer which 'materially affect the insurer's risk.'" *Catlin*, 778 F.3d at 83 (quoting *Giragosian*, 57 F.3d at 55). And "full disclosure" requires the insured to come forward with all material facts "of which the insured has, or ought to have, knowledge even though no inquiry be made." *Grande*, 436 F.3d at 283. Within the context of marine insurance, a "material fact is 'that which can possibly influence the mind of a prudent and intelligent insurer in determining whether it will accept [a] risk.'" *Catlin*, 778 F.3d at 82 (quoting *Pesante*, 459 F.3d at 38) (internal quotation marks omitted).

An insured's "loss history" is a relevant and material fact that must be disclosed to the insurer, as the insured's loss history affects the riskiness of issuing an insurance policy. *See Inlet Fisheries Inc.*, 518 F.3d at 655 (the sinking of the Maren I, a vessel previously owned by the insured, was a material fact that should have been disclosed to the insurer; the insured's failure to do so permitted insurer to void the policy); *Certain Underwriters at Lloyd's v. Montford*, 52 F.3d 219, 221 (9th Cir. 1995) ("total loss on a vessel named the

---

[4] Judgment on the pleadings would be denied even if Morales's position with respect to the *uberrimae fidei* doctrine was meritorious because, in addition to seeking a declaration as to whether the policy is void, the complaint also seeks a declaration as to whether QBE is liable for the full *extent* of Morales's claimed losses. Compl. at 8. The latter issue would not be disposed of even if Morales's position held water, as Morales cannot argue that the alleged misrepresentations would be completely immaterial to QBE's liability—even under the recent development in English law. Docket Nos. 24 at 13, 24-2 at 17; *see also* Costabel, *The UK Insurance Act 2015*, *supra*, at 138–54.

'Pamela Ann'" was a material fact that should have been disclosed, and so insurer could elect to void insurance policy).

In this case, QBE alleges that Morales failed to disclose various material facts, one of which relates to Morales's loss history. As in *Inlet Fisheries* and *Montford*, Morales allegedly did not disclose his full loss history when seeking to insure his 48' yacht because he did not tell QBE that he grounded a 40' yacht in 2010 and that this incident resulted in a total loss of the vessel. *See Inlet Fisheries In*c., 518 F.3d at 655; *Montford*, 52 F.3d at 221. The complaint further alleges that had QBE's "underwriters known about this prior loss, they would not have insured [the 48' yacht], or would have done so under different terms and conditions." Compl. ¶ 28. These allegations are sufficient to establish a plausible violation of the *uberrimae fidei* doctrine, and to maintain a declaratory judgment action. Thus, Morales's motion to dismiss for failure to state a claim is also denied.

## CONCLUSION

For the foregoing reasons, Morales's motions are **DENIED**. The parties are urged to explore settlement.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of September 2016.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge