# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

QBE SEGUROS,
    Plaintiff,

    v.                                    Civil No. 15–2091 (BJM)

CARLOS A. MORALES-VÁZQUEZ,
    Defendant.

## OPINION AND ORDER

QBE Seguros ("QBE") brought this action under the court's admiralty jurisdiction against Carlos Morales-Vázquez ("Morales"), seeking a judgment declaring that Morales's marine insurance policy is void *ab initio*, either under the terms of the policy or the doctrine of *uberrimae fidei*; that Morales breached the "warranty of truthfulness" in the application for the insurance policy, thereby excusing QBE from making any payments to Morales on the policy; or that the policy does not cover all of Morales's claimed losses. Docket No. 14 ("Compl."). Morales counterclaimed, alleging breach of contract and entitlement to consequential damages. Docket No. 15. Morales moved for summary judgment on QBE's claims, Docket Nos. 83, 84, and QBE opposed. Docket Nos. 104, 105. QBE moved for summary judgment only on its breach of warranty claim, Docket Nos. 70, 71, 72, 91, 92, and Morales opposed. Docket Nos. 78, 79, 99. The case is before me on consent of the parties. Docket No. 47.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo* v. *U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S.

317, 323 (1986). Once that bar is cleared, "the burden shifts to the summary judgment target to demonstrate that a trialworthy issue exists," *Plumley v. S. Container, Inc.*, 303 F.3d 364, 368 (1st Cir. 2002), by "affirmatively point[ing] to specific facts" in the record revealing the presence of a meaningful dispute, *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg* v. *P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan* v. *Smith*, 904 F.2d 112, 115 (1st Cir. 1990). And the court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## DISCUSSION

In its complaint, QBE alleges that Morales made two material misrepresentations in his application to QBE for insurance for his vessel: it contends that Morales misrepresented his prior boating history and his prior loss history. Compl. ¶ 17. Misrepresentation is "the act or an instance of making a false or misleading assertion about something, usu[ally] with the intent to deceive. Misrepresentation, Black's Law Dictionary (10th ed. 2014).

Within federal maritime law, there are at least two doctrines that excuse an insurer from paying on a policy where the insured misrepresented facts. The first, *uberrimae fidei*, or the duty of utmost good faith, is unique to maritime law. *Catlin at Lloyd's v. San Juan Towing & Marine*, 778 F.3d 69, 75 n.6 (1st Cir. 2015) (explaining that although at one time good faith was a requirement in contract law, it now only exists in maritime insurance). To prove a breach of the duty of utmost good faith, the insurer must show that the insured misrepresented a material fact. *Id.* at 83. Materiality is judged based on an objective standard. *St. Paul Fire & Marine Ins. Co. v. Halifax Trawlers, Inc.*, 495 F. Supp. 2d 232, 240 (D. Mass. 2007).

The second doctrine is based in federal contract law and is applicable where the contract between the parties includes a warranty of truthfulness. If the contract does include a promissory warranty of truthfulness, then the insured's misrepresentation of fact in that contract will also excuse the insurer from paying on the policy. *See Markel Am. Ins. Co. v. Leonor Veras*, 995 F. Supp. 2d 65, 77 (D.P.R. 2014) (finding the language of the insurance policy contained a warranty of truthfulness and that the defendant's misrepresentations had breached that warranty). To prove a breach of the warranty of truthfulness, the insurer must show that the insured misrepresented a fact. *Leonor Veras*, 995 F. Supp. 2d at 77. The contract itself controls any interpretation of the contract terms. *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31–32 (2004).

Morales seeks summary judgment because he contends that QBE cannot prove the elements required under the first doctrine, *uberrimae fidei*. Docket No. 83. He also argues that summary judgment is appropriate under the Puerto Rico Insurance Code. *Id.* at 22–23. QBE seeks summary judgment because it contends that it can prove the elements required under the second doctrine, the warranty of truthfulness in contract law, solely based on Morales's alleged misrepresentation of his prior boating history. Docket No. 72. Neither party is seeking summary judgment on QBE's final count, that the insurance policy does not cover all of Morales' claims, nor do the parties seek summary judgement on Morales's counterclaim.

## Morales's Motion for Summary Judgment

### I.     Background

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[1] submissions: Morales's Statement of Uncontested Facts ("SUF"), Docket No. 84, QBE's

---

[1] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). While the "district court may forgive a party's violation of a local rule," litigants

Opposing Statement of Facts ("OSF"), Docket No. 104, and QBE's Statement of Additional Material Facts ("SAMF"), Docket No. 104.

QBE is a Puerto Rico corporation authorized by the Puerto Rico Insurance Commissioner's Office to sell ocean marine insurance. Compl. ¶ 4. In March 2014, Morales applied for insurance from QBE for his 48' yacht ("QBE Application"). SUF ¶¶ 1, 8. This became policy OYP-00001077-00. SUF ¶¶ 7–8.

Morales placed his application for insurance from QBE through Angel Cruz-Rodríguez, an insurance broker. SUF ¶ 4; OSF ¶ 4. Colonial Insurance is QBE's general agent, which received and processed Morales's QBE Application. SUF ¶ 27; OSF ¶ 27. Cruz-Rodríguez was listed as "Agent" on the Colonial Insurance invoice for the payment of the premium for the insurance policy; both Colonial Insurance and Cruz-Rodríguez were listed as "Agent/Broker" on the declarations page of the policy; and Cruz was listed as "Insurance Agent" on two letters from QBE. SUF ¶¶ 28–33. Cruz-Rodríguez worked with MAPFRE, another insurance company, in the past. SUF ¶ 37. When placing Morales's application, he did not have a written authorized representative agreement with QBE. Docket No. 83 at 10. Cruz-Rodríguez initially suggested that Morales choose a policy with MAPFRE as opposed to QBE. SAMF ¶ 2.

As part of the application process, Morales hired Jose R. Terrassa, a surveyor, to survey his yacht. SUF ¶ 39–40. QBE requires all vessel surveys, which are required for the application process, to be completed by Terrassa. SUF ¶ 39; OSF ¶ 39. Morales and Terrassa had worked together previously. SAMF ¶ 15. Morales paid Terrassa for his services, but QBE gave Morales a credit that covered the cost of those services. SAMF ¶¶ 13–14. Terrassa's final product, the Condition and Valuation Report, stated "in the making of this report or instrument the surveyor is acting on behalf of the person . . . requesting the same." SAMF ¶ 16. The Condition and Valuation Report was not specific to QBE as Morales could have included it as part of his application to any insurance company. Docket No. 105 at 6–7.

---

ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

When filling out the question on the QBE Application asking about prior losses, Morales did not include the fact that he had grounded a different vessel in 2010. OSF ¶¶ 16, 37. In addition, when filling out the question on the QBE Application asking about prior boating history, Morales listed only two of the seven vessels that he had owned and operated. Docket No. 71 at ¶ 12; Docket No. 78 at ¶ 12.

After receiving the QBE Application, QBE's underwriter sent an email to Cruz-Rodríguez, who had submitted Morales's QBE Application, and attached a quote for a policy that she "quoted basing [herself] on policy OYP-0000746-02." SUF ¶¶ 2–6. In 2012, QBE acquired Optima Insurance Co. Docket No. 78 ¶ 15. The year prior, Morales had applied for and received insurance policy OYP-0000746-02 from Optima Insurance Co. for a different vessel ("Optima Application). SUF ¶ 10; Docket No. 78 ¶¶ 15, 21. In the Optima Application, Morales left blank the questions asking about prior boating history and prior losses. SUF ¶¶ 45–47.

QBE's Underwriting Guidelines, which are used to guide underwriters deciding whether to issue a quote, include the minimum necessary information to provide a quote. Docket No. 85–4 at 11. The list does not include prior losses or boating history. *Id*. at 11–13. QBE's representative stated that Morales's QBE Application was considered before QBE issued Morales his policy. OSF ¶ 6.

On October 24, 2014, the 48' yacht sustained damages as a result of a fire, and Morales alerted QBE to the damage. SUF ¶ 11. On August 10, 2015, QBE informed Morales that it was rescinding his policy. SUF ¶ 22.

## II.    Analysis

"This dispute concerns a marine insurance contract and therefore is governed by the principle of *uberrimae fidei,* or utmost good faith." *St. Paul Fire & Marine Ins. Co. v. Abhe & Svoboda, Inc.*, 798 F.3d 715, 719 (8th Cir. 2015). *Uberrimae fidei* requires the insured "to place the underwriter in the same situation as himself; to give to him the same means and opportunity of judging of the value of the risks." *State Nat. Ins. Co. v. Anzhela Explorer, L.L.C.*, 812 F. Supp. 2d

1326, 1351 (S.D. Fla. 2011) (quoting *Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 510–11 (1883)). Accordingly, under this "strict maritime rule," the "insured must make full disclosure of all material facts of which the insured has, or ought to have, knowledge . . . even though no inquiry be made." *Catlin (Syndicate 2003) at Lloyd's v. San Juan Towing & Marine Servs., Inc*., 974 F. Supp. 2d 64, 78 (D.P.R. 2013) (quoting *Grande v. St. Paul Fire & Marine Ins. Co.,* 436 F.3d 277, 283 (1st Cir. 2006)). Otherwise, the policy is voidable. *Catlin at Lloyd's*, 778 F.3d at 83; *see Sealink, Inc. v. Frenkel & Co.*, 441 F. Supp. 2d 374, 386 (D.P.R. 2006). The doctrine places a "high burden" on the insured as "[i]t is of no consequence whether the insured's misrepresentation or nondisclosure occurred due to fraud, negligence, accident, or mistake. *Catlin (Syndicate 2003) at Lloyd's*, 974 F. Supp. 2d at 78 (internal quotations omitted).

Morales advocates that the court follow the Eighth Circuit's precedent and find that the test for *uberrimae fidei* is two-pronged: the misrepresented or non-disclosed fact must be material, and the insurer must have relied on the misrepresentation or omission in issuing the policy. *Abhe & Svoboda, Inc.*, 798 F.3d at 722 (requiring "actual reliance and objective materiality as distinct elements"). However, the First Circuit's binding precedent, issued in the same year as *Abhe & Svoboda, Inc.*, does not require actual reliance as part of the analysis. *Catlin at Lloyd's*, 778 F.3d at 82. Instead, the First Circuit simply requires materiality: "Under *uberrimae fidei*, when the marine insured fails to disclose to the marine insurer *all* circumstances known to it and unknown to the insurer which 'materially affect the insurer's risk,' the insurer may void the marine insurance policy at its option." *Id*. at 83 (internal citations omitted). In its analysis, the court finds that the insurer "*could have* reasonably" made assumptions and evaluations based on the insured's failure to disclose the true value of the vessel. *Id*. at 82 (emphasis added). Notably, the court did not ask whether the insurer actually did make its evaluations based on the false value of the vessel, only that it could have. Therefore, this court is also bound to consider only the materiality of Morales's non-disclosures as opposed to what information QBE actually relied upon in choosing to issue a policy.

A fact is material if it "can possibly influence the mind of a prudent and intelligent insurer in determining whether it will accept the risk." *Halifax Trawlers, Inc.*, 495 F. Supp. 2d at 240 (quoting *Commercial Union Ins. Co. v. Pesante*, 459 F.3d 34, 38 (1st Cir. 2006)). "Whether something is material is an issue that is ordinarily left to the trier of fact, unless the outcome is 'so clear that a reasonable jury could decide it only one way.'" *Id.* (quoting *Grande*, 436 F.3d at 283). "[C]ourts and commentators have long recognized that materiality is primarily a question of fact, the resolution of which is necessarily a function of context and circumstances." *Grande*, 436 F.3d at 283 (quoting *Dopp v. Pritzker,* 38 F.3d 1239, 1244 (1st Cir. 1994)).

Prior loss history is normally a material fact in an insurance contract. *See Certain Underwriters at Lloyd's, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 655 (9th Cir. 2008) (the sinking of the Maren I, a vessel previously owned by the insured, was a material fact that should have been disclosed to the insurer; the insured's failure to do so permitted insurer to void the policy); *Certain Underwriters at Lloyd's v. Montford*, 52 F.3d 219, 221 (9th Cir. 1995) ("total loss on a vessel named the 'Pamela Ann'" was a material fact that should have been disclosed, and so insurer could elect to void insurance policy). It is material because the insured's prior losses affects the riskiness of the insurance policy.

Nevertheless, Morales argues that both his prior boating history and prior losses—notably the 2010 grounding—were not material facts such that his non-disclosure of the same violated the doctrine of *uberrimae fidei*. To support his contention that QBE does not rely on prior loss history in issuing policies, Morales points to the fact that QBE's underwriter stated in an email that she relied on the Optima Application in approving the policy at issue. SUF ¶¶ 2–6. In the Optima Application, Morales left blank the questions asking about prior boating history and prior losses. SUF ¶¶ 45–47. Furthermore, QBE's Underwriting Guidelines, which explain the step-by-step process for deciding whether to issue a quote, do not include prior losses or boating history as facts for the underwriter to consider. Docket No. 85-4 at 11–13. These facts suggest that QBE does not consider an applicant's prior losses or prior boating history material to issuing policies. However, as QBE points out, the listed criteria in the Guidelines are just the minimum necessary information

to provide a quote, so the fact that prior losses and prior boating history are not listed does not require that QBE underwriters do not consider those factors. *Id*. In addition, QBE's representative stated that the QBE Application (where Morales provided incomplete answers for his prior losses and prior boating history) *and* the Optima Application (where Morales left those questions blank) were taken into account before issuing the policy. OSF ¶ 6. Therefore, viewing the facts in the light most favorable to QBE, there is a genuine dispute of material fact as to whether or not Morales's non-disclosure of his prior boating history and prior losses was material.

Next, Morales argues that QBE waived its right to deny insurance based on Morales' non-disclosure because QBE's agents knew the information that Morales had failed to disclose before QBE issued its policy. In contract law, "[w]aiver is the intentional relinquishment of a known right, and a party's intent to waive a right can be drawn from conduct that is inconsistent with the assertion of that right." *Natures Way Marine, LLC v. Everclear of Ohio, Ltd.*, 37 F. Supp. 3d 1232, 1242 (S.D. Ala. 2014), *amended*, No. 1:12-CV-316-CG-M, 2014 WL 5465885 (S.D. Ala. Oct. 28, 2014) (internal citations omitted); *see In re Frescati Shipping Co., Ltd.*, 718 F.3d 184, 214 (3d Cir. 2013) (allowing a party to raise equitable defenses in a maritime contract controlled by federal law).

Principles of agency apply in maritime contracts. *See Pearson v. Leif Hoegh & Co.*, No. 91-CV-1620, 1992 WL 5020, at *6 (4th Cir. Jan. 16, 1992) (addressing agent liability in the context of a maritime contract); *Ins. Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934, 940 (11th Cir. 1990) (same); *Fed. Ins. Co. v. PGG Realty, LLC*, No. 06-CV-2455, 2007 WL 1149245, at *6 (S.D.N.Y. Apr. 17, 2007), *aff'd sub nom. Fed. Ins. Co. v. Keybank Nat. Ass'n*, 340 F. App'x 5 (2d Cir. 2009) (same); *The General Maritime Law of Negligence*, 1 Admiralty & Mar. Law § 5-2 (5th ed.) ("The law of agency is fully applicable in admiralty."). As there is no established federal maritime rule addressing principal-agent liability, courts instead apply state law principles. *See Fed. Ins. Co.*, No. 06-CV-2455, at *6 (applying New York law in the absence of "an established federal maritime rule"); *Sealink, Inc.*, 441 F. Supp. 2d at 384 ("[W]hen neither party claims that a federal statute or rule of maritime law governs the current situation, courts must look to state law to resolve the

issues."); *see also New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112 (2d Cir. 2001) (applying New York law); *Dubret v. Holland Am. Line Westours, Inc.*, 25 F. Supp. 2d 1151, 1153 (W.D. Wash. 1998) (applying Washington law).

An agent is a person who has contracted "to render some service, or to do something for the account or at the request of another." 31 L.P.R.A. § 4421. The principal's offer of authority may be express or implied, inferred "from the acts of the principal, from acts or deeds which manifestly reveal such declaration of consent necessarily implying, evidently and clearly, the intent to be bound." *Bank of Nova Scotia v. Vélez Rullán,* 91 P.R.R. 347, 353, 91 D.P.R. 358 (1964) (citing 31 L.P.R.A. § 4422); *see CMI Capital Mkt. Inv., LLC v. Municipality of Bayamon,* 410 F. Supp. 2d 61, 75 (D.P.R. 2006). The agent's acceptance of authority "may also be express or implied, the latter being inferred from the acts of the agent." 31 L.P.R.A. § 4422. If an agency relationship exists, "the knowledge of an agent of matters within his scope of employment is imputable to his principal, unless he acts adversely to his principal or for another's interests." *Gonzalez-Gonzalez v. United States*, 581 F. Supp. 2d 272, 279 (D.P.R. 2008). "The existence of an agency relationship, as well as the scope of the agent's authority, is a question of fact to be decided by the jury." *Torres v. Nat'l Ass'n of Underwater Instructors (NAUI)*, 928 F. Supp. 134, 138–40 (D.P.R. 1996) (quoting *Fed. Sav. and Loan Ins. Corp. v. Shearson-Am. Express*, 658 F. Supp. 1331, 1338 (D.P.R. 1987)).

Morales identifies two persons—Angel Cruz-Rodríguez, an insurance broker, and Jose R. Terrassa, a surveyor—as QBE's agents. SUF ¶¶ 2, 39–40. However, Morales has failed to show that there are no genuine disputes of material fact as to the existence of either relationship.

Morales placed his application for insurance from QBE through Cruz-Rodríguez. SUF ¶ 4; OSF ¶ 4. Colonial Insurance is QBE's undisputed general agent, which received and processed Morales's QBE Application. SUF ¶ 27; OSF ¶ 27. Morales cites to multiple instances where QBE or Colonial Insurance identified Cruz-Rodríguez as an Agent or Agent/Broker to prove that Cruz-Rodríguez is an agent of QBE: Cruz-Rodríguez was listed as "Agent" on the Colonial Insurance invoice for the payment of the premium for the insurance policy; both Colonial Insurance and Cruz-Rodríguez were listed as "Agent/Broker" on the declarations page of the policy; and Cruz

was listed as "Insurance Agent" on two letters from QBE. SUF ¶¶ 28–33. However, this evidence equally supports QBE's position that Cruz-Rodríguez is the agent of Morales, not QBE, as "Agent" and "Agent/Broker" could easily refer to either Morales's agent or QBE's agent. Docket No. 105 at 3. Additionally, someone in Cruz-Rodríguez's position—"acting as a middleman between the insured and the insurer; soliciting insurance from the public under no employment from any special company; and, upon securing an order, places it with the a company selected by the insured, or if the insured as no preference, with a company selected by the broker"—is understood to be a broker and therefore the agent of the insured (Morales). *Brokers versus Agents*, 3 Couch on Ins. § 45:1. As Morales himself points out, Cruz-Rodríguez has worked for multiple companies, and he does not have a written authorized representative agreement with QBE. Docket No. 83 at 10. The fact that Cruz-Rodríguez initially suggested that Morales choose a policy with a different insurance company as opposed to QBE also suggests that Cruz-Rodríguez is Morales's broker and not QBE's agent. SAMF ¶ 2. Therefore, Morales has not established as a matter of law that Cruz-Rodríguez is QBE's agent such that his knowledge could be imputed to QBE.

Next, Morales hired Terrassa to survey his yacht as part of the application process for receiving insurance from QBE. SUF ¶ 40. QBE's policy is that all vessel surveys, which are required for the application process, must be completed by Terrassa. SUF ¶ 39; OSF ¶ 39. Morales argues that because QBE requires that insurance applicants exclusively use Terrassa for required surveys, Terrassa is QBE's agent. Docket No. 83 at 13. However, QBE presents sufficient facts to undercut that claim. Namely, QBE notes that Morales had hired Terrassa before, so they had a preexisting relationship; that Morales directly paid Terrassa for his services (although QBE then gave Morales a credit that covered the cost of those services); that Morales could have used the survey completed by Terrassa to apply for insurance from any insurance carrier; and that Terrassa's final work product, the Condition and Valuation Report, stated "in the making of this report or instrument the surveyor is acting on behalf of the person . . . requesting the same." SAMF ¶¶ 13–16; Docket No. 105 at 6–7. These facts, all of which suggest that Terrassa's loyalty was to Morales

as opposed to QBE, are enough to create a genuine dispute of material fact that precludes summary judgment.

Furthermore, Morales argues that QBE also waived its right to void the policy because it issued the policy knowing that Morales had not disclosed the information that it now argues was material. However, Morales's argument is unpersuasive. The only case Morales provides to support his analysis inapposite as it applies Rhode Island law to a life insurance claim; Morales also fails to address the heavy presumption, specific to maritime insurance, that it is the insured's responsibility to provide all material facts to the insurer. *See* Docket No. 83 at 14 (citing *Nationwide Life Ins. Co. v. Steiner*, 722 F. Supp. 2d 179 (D.R.I. 2010)); *Grande v. St. Paul Fire & Marine Ins. Co.*, 436 F.3d 277, 282 (1st Cir. 2006) (the requirement that the insured "'must disclose in an application for insurance all known circumstances that materially affect the insurer's risks' . . . is especially stringent under general maritime law where marine insurance policies are 'traditionally contracts uberrimae fidei'").

Even indulging Morales's argument, there still exists a genuine issue of material fact as to what information QBE considered before issuing the policy. Morales argues that QBE was aware of an inconsistency between the Optima Application, which left blank the questions regarding his prior loss history and boating experience blank, and the QBE Application, which provided some information for each question. Docket No. 83 at 14–16. Morales argues that QBE's failure to reconcile this inconsistency prevents QBE from now voiding the policy based on Morales's misrepresentation. There is a hole in this logic, though: a blank answer in an application to a different insurance company and the answer that Morales provided in his QBE Application are not inconsistent in the same way that a "yes" and a "no" to the same question would be. Nothing about two blank answers in a previous application should have made the underwriter realize that Morales's answer in the QBE Application was incomplete. Instead, the blank answers in the Optima Application are only relevant in that they call into question the materiality of the information requested. As discussed above, there remains a genuine dispute of material fact on that issue.

Morales also argues that the Puerto Rico Supreme Court's opinion in *Carpets & Rugs Warehouses v. Tropical Reps & Distributors*, 175 P.R. Dec. 615 (2009) requires summary judgment be granted in Morales's favor. Specifically, he argues that the court's holding compels QBE to be estopped from withdrawing its offer to adjust a claim because although it found grounds to deny coverage during the investigation of the claim, QBE has not alleged that Morales committed fraud. Docket No. 83 at 23. However, Morales provided no certified translation of the Puerto Rico Supreme Court opinion, which is required for this court to consider the case. *Amvest Corp. v. Mayoral Amy*, 778 F. Supp. 2d 187, 201 n.10 (D.P.R. 2011) (court precedent and Local Rule 5(g) dictate that the court could not consider the untranslated Puerto Rico cases provided by a party); *see Lupu v. Wyndham El Conquistador Resort & Golden Door Spa*, 524 F.3d 312, 314 n.3 (1st Cir. 2008) (because the plaintiff relied upon an untranslated decision of the Puerto Rico Supreme Court, the plaintiff could not use the decision to support his argument); *P.R. Highway & Transp. Auth. v. Redondo Constr. Corp.*, 2011 WL 1238813 at *2, 2011 U.S. Dist. LEXIS 30266 at 5 (D.P.R. Mar. 23, 2011) ("It is well settled that parties who wish to rely on materials which are not in English must provide certified English translations of those materials."). Morales appears to be aware of this rule as he sought to submit a certified translation of the case within fifteen days but chose not to follow through on that request. Docket No. 83 at 24 ("Morales moves to submit a certified translation within 15 days"). Consequently, the court cannot consider the merits of this argument.

Finally, Morales seeks summary judgment on the basis that QBE "unreasonably delayed the adjustment of [Morales's] claim" in violation of the Puerto Rico Insurance Code by failing to resolve Morales's claim within ninety days. P.R. Laws Ann. tit. 26 § 2716(b) (2008).[2] The Insurance Code requires that "[t]he investigation, adjustment, and resolution of any claim shall be made in the shortest reasonable period of time within the first ninety (90) days after said claim have been submitted to the insurer." *Id*. The Code further provides that "[i]n the event that an

---

[2] Unlike Chapter 11 of the Puerto Rico Insurance Code, which only applies to "insurances *other than ocean marine . . . insurance*," there is no explicit exemption for marine insurance from Chapter 27 of the Puerto Rico Insurance Code. *Catlin at Lloyd's v. San Juan Towing & Marine*, 778 F.3d 69, 77 (1st Cir. 2015) (quoting P.R. Laws Ann. tit. 26, § 1101).

insurer is unable to resolve a claim within . . . [ninety days], he/she shall maintain in its records any documents attesting to the existence of a just cause to exceed the term previously provided." *Id*. It is undisputed that Morales submitted his claim on October 24, 2014, the same day that the vessel was damaged. SUF ¶ 11. It is also undisputed that on August 10, 2015, QBE informed Morales that it was rescinding his policy. SUF ¶ 22.

The material question, then, is whether QBE maintained records showing just cause for the resolution of Morales's claim 201 days after the ninety-day period had ended. Morales made no argument as to QBE's maintenance of records. Moreover, Morales has not established why, even if QBE did violate this code, a violation would lead to dismissal of QBE's claim. Morales cited three cases from the Puerto Rico Supreme Court but did not provide certified English translations for any of the three. As discussed above, such an omission precludes the court from considering these decisions. *Amvest Corp.*, 778 F. Supp. 2d at 201 n.10. Even then, the one case that does have an English translation publicly available, *Comisionado de Seguros P.R. v. Gen. Acc. Ins. Co.*, 132 D.P.R. 543 (1993), was decided fifteen years before the statute was amended to include the document preservation remedy—that the insurer should maintain records if it fails to resolve a claim within ninety days—and therefore does not address the question at hand. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments square and distinctly,' or else forever hold its peace." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (quoting *Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988)). Morales has failed to demonstrate an absence of a genuine issue of material fact as to whether QBE has maintained the appropriate records required given the delay in the resolution of Morales's claim.

Although Morales seeks summary judgment on the entirety of QBE's complaint, he did not address QBE's second cause of action for breach of warranty. As such, the court did not consider summary judgment for Morales on that ground.

## QBE's Motion for Summary Judgment

### I.    Background

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56 submissions: QBE's Statement of Uncontested Facts ("SUF"), Docket No. 71; Morales's Opposing Statement of Facts ("OSF"), Docket No. 78; and QBE's Response to Morales's Opposing Statement of Facts ("RSF"), Docket No. 91.

QBE is a Puerto Rico corporation authorized by the Puerto Rico Insurance Commissioner's Office to sell ocean marine insurance. Compl. ¶ 4. In March 2014, Morales applied for insurance from QBE for his 48' yacht. SUF ¶¶ 1–2. The application form ("QBE Application") states that the "statements and answers provided [in the application] are warranted by [the applicant] to be true and correct." SUF ¶¶ 13–14. The QBE Application also states "If incorrect answers are provided (either by error, omission or neglect), I will be in breach of this warranty and the policy, if issued, will be void from inception. . . . I also agree that if the policy is issued, it was issued by you based upon and in reliance of the truthfulness and completeness of the answers provided herein." SUF ¶ 14. The QBE Application required Morales to "give details of boating experience by providing, in chronological order, list of boats owned or operated." SUF ¶ 11. Morales listed two vessels. SUF ¶ 12.

On October 24, 2014, the 48' yacht sustained damages as a result of a fire, and Morales informed QBE of the damage. SUF ¶¶ 4–5. On August 7, 2015, QBE examined Morales under oath. SUF ¶ 6. When questioned by QBE, Morales admitted under oath that he owned or operated five vessels that he did not include in the QBE Application. SUF ¶ 12; OSF ¶ 12.

In QBE's records regarding a 2011 policy, its underwriters stated that Morales had "normal experience between 2 and 5 years" whereas QBE's records from 2013 include notes that Morales had "more than 15 years" of "experience." OSF ¶ 6.

### II.    Analysis

QBE seeks summary judgment on its second cause of action: that Morales breached his insurance policy's warranty of truthfulness when he failed to disclose his prior boating experience

on his application for insurance from QBE.[3] As there is no dispute that the insurance policy is a maritime insurance contract, "federal law controls the contract interpretation." *Leonor Veras*, 995 F. Supp. 2d at 77; see *La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1025 (9th Cir. 2001) ("[I]nsurance for a vessel is clearly within the scope of admiralty jurisdiction."). Chaper 11 of the Puerto Rico Insurance Code explicitly only applies to "insurances *other than ocean marine . . . insurance.*" *Catlin at Lloyd's*, 778 F.3d at 77 (quoting P.R. Laws Ann. tit. 26, § 1101). The courts have been clear that federal law as opposed to Puerto Rico Insurance Code § 1110 applies to the interpretation of maritime insurance contracts. *Id.* ("This Court has previously ruled that in enacting this provision [26 L.P.R.A. § 1110], Puerto Rico intended "to exclude maritime insurance contracts from [the] statutory provisions [in Chapter 11 of the Code] governing the interpretation and construction of insurance contracts." (quoting *Lloyd's of London v. Pagán–Sánchez,* 539 F.3d 19, 25 (1st Cir. 2008))).

"Therefore, we turn to principles of general maritime contract law to determine" the meaning of the contract. *Fed. Marine Terminals, Inc. v. Worcester Peat Co.*, 262 F.3d 22, 26 (1st Cir. 2001) (citing *Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 26 (2d Cir. 1988)). In *Norfolk S. Ry. Co. v. Kirby*, the Supreme Court made clear that courts must look to the plain language when interpreting a maritime contract and read the language "naturally." 543 U.S. at 31–32 (citing *Green v. Biddle,* 8 Wheat. 1, 89–90, 5 L.Ed. 547 (1823) ("[W]here the words of a law, treaty, or contract, have a plain and obvious meaning, all construction, in hostility with such meaning, is excluded")). If the terms of the contract are ambiguous, i.e. "capable of more than a single meaning," only then may the court examine parol evidence. *Fed. Marine Terminals, Inc.*, 262 F.3d at 26–28 (quoting *Garza,* 861 F.2d at 27) ("the district court properly refused to consider evidence of any negotiations or extrinsic documents to alter that language" after finding that the contract language was unambiguous); *see CTI-Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 382

---

[3] QBE takes pains to note that it is not basing its summary judgment request on its first cause of action (misrepresentation/concealment) but instead solely on the contract law question of breach of the warranty of truthfulness written into QBE Application. Docket No. 72 at 12.

(2d Cir. 1982) (citing Restatement (Second) of Contracts § 213 (1979)) ("The general rule is that the terms of an unambiguous, integrated contract may not be varied by parol evidence.").

The unambiguous language of QBE Application states that "[t]he information provided in the Application is *warranted by you to be true* and correct in all respects." SUF ¶ 13 (emphasis added). Interpreting the plain language of the contract, it is clear that the QBE Application includes a warranty of truthfulness. *See Leonor Veras*, 995 F. Supp. 2d at 77 (finding that the insurance application, where the wording is nearly identical to Morales's QBE Application, was written such that it was "clear that the truthfulness of all representations made therein is warranted by the applicant and that incorrect answers constitute breach of that warranty"). As in *Leonor Veras*, Morales breached that warranty when he failed to tell the insurer "of the other vessels he had previously owned." *Id*. The QBE Application required Morales to "give details of boating experience by providing, in chronological order, list of boats owned or operated." SUF ¶ 11. Although Morales listed two vessels, he failed to list five other vessels that he now admits to previously owning or operating. SUF ¶ 12. This failure is a misrepresentation that breached the warranty of truthfulness.

Morales argues that his failure to list the other vessels was merely an omission, whereas the QBE Application states that misrepresentations or concealment of material facts will void the policy. Docket No. 79 at 18–19. As such, Morales suggests that his nondisclosure did not violate the warranty of truthfulness. This is unpersuasive for two reasons. First, admitting to owning or operating only two vessels when he in fact had owned/operated seven is a misrepresentation because two and seven are not equivalent. In addition, Morales's failure to list the vessels is also concealment because he was keeping his true prior boating history from QBE. Consequently, Morales's failure to list his complete prior boating history was a breach of the warranty of truthfulness.

The parties contest whether the warranty in the contract that Morales breached is promissory or affirmative. Docket Nos. 79 at 6–9, 92 at 2–4. "Under federal law, 'a breach of a promissory warranty in a maritime insurance contract excuses the insurer from coverage,'" but

Morales argues that a breach of an affirmative warranty will only excuse the insurer from coverage if the warranty was material. *Leonor Veras*, 995 F. Supp. 2d at 77 (quoting *Pagán–Sánchez,* 539 F.3d at 24); *see* Docket No. 79 at 9 (citing T. Schoenbaum, *Admiralty and Maritime Law* § 17–15, pp. 1001–02 (4th ed. 2004)); *see also Vlastos v. Sumitomo Marine & Fire Ins. Co. (Europe)*, 707 F.2d 775, 777 (3d Cir. 1983) ("If a representation is not material to the risk, its falsity does not avoid the contract. On the other hand, the materiality of a warranty to the risk insured against is irrelevant; if the fact is not as warranted, the insurer may deny recovery.").

However, because the contract states that the warranty of truthfulness was material to the risk assumed by QBE in issuing the policy, the parties' dispute as to whether the warranty is affirmative or promissory is not dispositive to the determination that Morales breached the warranty and rendered the policy voidable. The QBE Application clearly states that the insurance policy was "issued by [QBE] based upon and in reliance of the truthfulness and completeness of the answers provided herein." SUF ¶ 14. As explained earlier, a fact is material if it "can possibly influence the mind of a prudent and intelligent insurer in determining whether it will accept the risk." *Halifax Trawlers, Inc.*, 495 F. Supp. 2d at 240 (quoting *Pesante*, 459 F.3d at 38). Here, the contract is unambiguous that the warranty is material as it states that QBE would rely on and be influenced by Morales's answers in determining whether to accept the risk of issuing an insurance policy.

Moreover, when the contract language is unambiguous, as it is here, the parol evidence rule prohibits consideration of outside evidence in interpreting the meaning of the contract. *See Fed. Marine Terminals, Inc. v*, 262 F.3d at 26–28; *Richmond Steel, Inc. v. Legal & Gen. Assur. Soc., Ltd.*, 821 F. Supp. 793, 802 (D.P.R. 1993) (referring to additional evidence is not necessary when "[t]he terms of [the] contract are clear).

QBE also argues that Morales breached the warranty of truthfulness by falsely stating in the QBE Application that he had an emergency haul-out plan. Docket No. 72 at 7. However, this motion for summary judgment is the first time that QBE has made such an argument. *See generally* Compl. Importantly, a party may not raise issues in its motion for summary judgment that were

not raised in the pleadings as that would place the opposing party at an unfair disadvantage. *See Ramos v. Dep't of Educ.*, 52 F. Supp. 3d 387, 436 (D.P.R. 2014) (citing *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004)) ("It has been well established that a claimant cannot bring forth a claim at the summary judgment stage for the first time."). Therefore, QBE's arguments regarding the emergency haul-out plan will not be considered in ruling on this motion.

Morales raises two affirmative defenses to his breach of the warranty of truthfulness: estoppel and waiver. *See Suydam v. Reed Stenhouse of Washington, Inc.*, 820 F.2d 1506, 1510 (9th Cir. 1987) ("[A]n insurer may be estopped from asserting a breach of warranty."); *Natures Way Marine, LLC*, 37 F. Supp. 3d at 1242 ("[C]ontract law recognizes that parties can waive breach of contract claims.").

"[G]rounded on a notion of fair dealing and good conscience," the federal maritime law doctrine of equitable estoppel "operates to preclude a party who has made representations of fact through his words or conduct from asserting rights which might perhaps have otherwise existed as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right." *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 133 (3d Cir. 2002) (quoting *Marine Transp. Svcs. Sea-Barge Group, Inc. v. Python High Perf. Marine Corp.,* 16 F.3d 1133, 1138 (11th Cir. 1994) and *Oxford Shipping Co., Ltd. v. New Hampshire Trading Corp.,* 697 F.2d 1, 4 (1st Cir. 1982)). Therefore, the party asserting equitable estoppel must prove: "1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." *Pagane Mar. Ltd. v. Glingrow Holding Ltd.*, No. 07 CIV. 10726 (PKL), 2008 WL 276489, at *5 (S.D.N.Y. Jan. 31, 2008) (quoting *Kosakow v. New Rochelle Radiology Assocs.,* 274 F.3d 706, 725 (2d Cir. 2001)). "Normally questions of estoppel . . . depend upon inferences to be drawn from known facts about which reasonable men could readily differ, and are therefore appropriate for submission to a jury."

*Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008, 1014 (8th Cir. 1991) (quoting *Travelers Indem. Co. v. Swanson,* 662 F.2d 1098, 1102 n.2 (5th Cir. 1981)).

Morales argues that QBE issued his insurance policy knowing of the truth of his prior boating history and that he detrimentally relied on QBE's issuance of the policy. Docket No. 79 at 20–21. QBE states that because it did not know of Morales's prior boating history when it issued the policy, Morales's estoppel defense must fail. Docket No. 92 at 8. QBE does not dispute that it is charged with knowledge of all information in its own records. *See id*. In QBE's 2011 records of a past insurance policy granted to Morales, its underwriters stated that Morales had "normal experience between 2 and 5 years" whereas in 2013, QBE's records show that Morales had "more than 15 years" of "experience." OSF ¶ 6. This drastic change in QBE's institutional knowledge raises genuine questions as to whether or not QBE knew of Morales's prior boating history when it issued the policy despite Morales's misrepresentation in the QBE Application. Such a dispute of material fact precludes summary judgment on the affirmative defense of estoppel. What information QBE had when it issued the policy and whether Morales's reliance was in good faith are matters for the trier of fact.

As discussed above in addressing Morales's motion for summary judgment, "[w]aiver is the intentional relinquishment of a known right, and a party's intent to waive a right can be drawn from conduct that is inconsistent with the assertion of that right." *Natures Way Marine, LLC*, 37 F. Supp. 3d at 1242 (internal citations omitted). QBE again argues that Morales's waiver defense must fail because once it "came into knowledge of the existence of these misrepresentations, it proceeded to deny coverage." Docket No. 92 at 8. Morales's evidence that QBE knew of his fifteen years of boating experience, though, creates a genuine dispute as to whether QBE knew that the information Morales provided on the QBE Application regarding his prior boating history was incorrect and yet chose to issue the policy anyway. "[I]ndulging all reasonable inferences" in Morales's favor, summary judgment is inappropriate because of the genuine disputes of material fact as to Morales's defenses. *See Griggs-Ryan*, 904 F.2d at 115.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment are **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of November, 2017.

*S/ Bruce J. McGiverin*

BRUCE J. McGIVERIN
United States Magistrate Judge