IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**QBE SEGUROS,**

    Plaintiff,

    v.

**CARLOS A. MORALES-VÁZQUEZ,**

    Defendant.

Civil No. 15-cv-2091 (BJM)

## ORDER

After a nonjury trial, this court declared that a QBE Seguros ("QBE") insurance policy for Carlos A. Morales-Vázquez ("Morales-Vázquez") was void *ab initio*. Docket No. ("Dkt.") 221. The Clerk of Court taxed costs of $12,138.12 against Morales-Vázquez. Dkt. 240. Pursuant to that calculation, this court ordered the United States Marshal to seize up to $12,138.12 from him. Dkt. 243. After the funds were seized, Óptima Seguros[1] ("Óptima") moved to deposit them. Dkt. 248. Morales-Vázquez responded by requesting the Clerk of Court return $8,432.00 of the seized funds to cover the premium he paid on the insurance policy that was declared void *ab initio*. Dkt. 249. Óptima replied, Dkt. 251, and Morales-Vázquez surreplied. Dkt. 255. This court has admiralty jurisdiction. Fed. R. Civ. P. 9(h). This case is before me on consent of the parties. Dkt. 47.

QBE originally sued Morales-Vázquez seeking a judgment declaring that his marine insurance policy was void *ab initio* under the doctrine of *uberrimae fidei* and that he breached the "warranty of truthfulness" when applying for the insurance policy, thereby excusing QBE from paying him under the policy, or that the policy did not cover all his claimed losses. Dkt. 14. Morales-Vázquez counterclaimed, alleging breach of contract and entitlement to consequential damages due to QBE's bad-faith adjustment. Dkt. 15. After a six-day nonjury trial, I granted

---

[1] Óptima represents that it acquired QBE in August 2019 and assumed obligations corresponding to policies issued by QBE as part of this acquisition. See Dkt. 248 at 1 n.1. Morales-Vázquez does not dispute this.

QBE's request for a declaratory judgment that the policy was void *ab initio* and denied Morales-Vázquez's claims. Dkts. 221, 222.

The First Circuit affirmed, Dkt. 236, and QBE moved for an order for payment of costs, Dkt. 238, which this court assessed at $12,138.12. Dkt. 240. The Supreme Court denied Morales-Vázquez's petition for a writ of certiorari. *Morales-Vazquez v. Optima Seguros*, 142 S. Ct. 424 (2021). Representing that it had acquired QBE in the meantime, Óptima then moved for execution of the judgment, Dkt. 241, which was granted. Dkt. 243. In compliance with this court's order, Oriental Bank issued a check payable to the Clerk of Court for $12,138.12. Dkt. 248-1.

Morales-Vázquez argues that, when an insurance policy is declared void *ab initio*, the premium paid must be refunded. Dkt. 249 at 2. Óptima responds that Morales-Vázquez waived this argument by not raising it until now. Dkt. 251 at 2–3. Further, it argues that Morales-Vázquez previously refused QBE's offer to reimburse the premiums at issue. *Id.* ¶ 3. Morales-Vázquez contends he did not waive his argument by failing to raise it earlier because he was not entitled to a refund of his premiums until the court declared his policy void. Dkt. 255 at 4. Further, he explains that he refused QBE's offer to refund his premiums because accepting that offer would have precluded his breach-of-contract claim under the doctrine of accord and satisfaction. *Id.* at 5. I find that Morales-Vázquez waived his right to challenge the Clerk of Court's calculation under Fed. R. Civ. P. Rule 54. Further, even if he did not, his cited authority supports finding that he waived his right to challenge the Clerk of Court's cost award.

The $12,138.12 at issue here was seized from Morales-Vázquez pursuant to the Clerk of Court's taxation of costs on May 24, 2021. Dkt. 240. This court may review the Clerk's action if either party moves it to do so within seven days. Fed. R. Civ. P. 54 (d)(1). Morales-Vázquez waited over twenty months to seek review. He offered no reason for the delay. Though the First Circuit

has never ruled on whether a failure to make a timely objection to a cost award constitutes a waiver of the right to challenge the award, several other circuits have held that it does, often when the request is late by far less time. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1255 (11th Cir. 2007) (approximately five months); *Bloomer v. United Parcel Service, Inc.*, 337 F.3d 1220 (10th Cir. 2003) (20 days); *Walker v. California,* 200 F.3d 624, 626 (9th Cir. 1999) (25 days); *Prince v. Poulos*, 876 F.2d 30, 33–34 (5th Cir.1989) (failed to object, but appealed to circuit); *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1244 (7th Cir.1988) (five days); *Gary v. Spires*, 634 F.2d 772, 773 (4th Cir. 1980) (per curiam) (two months). Accordingly, Morales-Vázquez's objection was untimely and thus waived.

Even if Morales-Vázquez did not waive his refund argument under Rule 54, his cited authority supports finding that his request is untimely.

I recognize Morales-Vázquez's contention that, "[w]hen an insurance policy is declared void *ab initio*, the premium paid must be refunded." Dkt. 249 at 2 (citing *Royal Ins. Co. of Am. v. Harbor Shuttle, Inc.*, 1999 WL 33236523, at *7 (E.D.N.Y. Jan. 25, 1999); *Albany Insurance Co. v. Horak*, 1993 WL 269620 at *5–6 (E.D.N.Y. 1993)). Óptima does not appear to dispute this.

After Óptima asserted Morales-Vázquez waived his argument on this issue by failing to raise it earlier, he conceded he did not previously mention the issue, but contended he did not waive his argument because he was not entitled to a refund of his premiums until the court declared his policy void. Dkt. 255 at 4 (citing *Garcia-Guzman v. Villoldo*, 273 F.3d 1, 7 (1st Cir. 2001) (quoting *Rodon v. Franco*, 105 P.R.R. 424, 425 (1976))). *Garcia-Guzman* addressed when the statute of limitations began to run on an action for damages arising out of an attachment of a property under Rule 56 of the Puerto Rico Rules of Civil Procedure caused by the attaching party's fault or negligence. 273 F.3d at 7. The court noted that rule "provides that the plaintiff in any action

may move, before or after judgment is entered, for a provisional attachment of the defendant's property to 'secure satisfaction of the judgment.'" *Id.* at 6 (quoting 32 L.P.R.A. App. III R. 56.1). However, if the court finds a plaintiff's claim meritless, "it follows that she has no right to the defendant's property, and that the attachment was unwarranted." *Id.* At that point, the plaintiff-attacher may then be liable to the defendant-attachee for damages caused by the attachment. *Id.*

The *Garcia-Guzman* court held the one-year statute of limitations to bring such a claim under Puerto Rico's Article 1802 did not begin running "until the defendant[-attachee] obtains a final and unappealable judgment establishing that the plaintiff[-attacher] has no valid claim to his property, and, therefore, that the attachment was wrongful." *Id.* The court contrasted this with a situation where a plaintiff wrongfully attaches a property that does not belong to the defendant at all. In that case, the statute of limitations would begin running upon notice of the attachment because proof of wrongful attachment does not depend on a judicial determination of the merits of the plaintiff's claim. *Id.* The *Rodon* court held, "in an action where a defendant's property has been attached to secure judgment, the defendant may claim the damages such an attachment has caused him by way of a permissive counterclaim under Rule 11.2 of the [Puerto Rico] Rules of Civil Procedure and as a contingent claim under Rule 14.2." *Rodon v. Fernandez Franco*, 5 P.R. Offic. Trans. at 518–19 (1976). However, it stopped short of finding that plaintiffs were required to do so. *Id.* at 516.

These cases are the only authority Morales-Vázquez offers as to his claim's timeliness. He does not explain what statute of limitations he believes should apply to his claim nor when that time began to run. To the extent he grounds his claim in Puerto Rico's Article 1802, his motion is untimely under the one-year statute of limitations used in *Garcia-Guzman*. *See also* 31 L.P.R.A. § 5298 (one-year statute of limitations for Article 1802 claims). I note that Article 1802 became

Article 1536 when Puerto Rico amended its Civil Code. *Quiles Quiles v. United States*, 2021 WL 5762950, at *1 n.1 (D.P.R. Dec. 3, 2021). However, no authority suggests the statute of limitations has changed. Even assuming his cause of action did not accrue until the Supreme Court's denial of certiorari on November 1, 2021, Morales-Vázquez waited until February 12, 2023, over 15 months later, to ask this court to return his insurance premiums.

Morales-Vázquez also cited *Starr Indem. & Liab. Co. v. Cont'l Cement Co.*, 2013 WL 1442456 (E.D. Mo. Apr. 9, 2013). Dkt. 255 at 4. There, the court held that, under Missouri law, an insurer had not waived its right to seek a declaratory judgment voiding a policy under *uberrimae fidei* despite failing to return the premiums paid by the insured. *Id.* at 15. The court reasoned that the insurer stood "ready, willing and able to return the premiums upon a favorable determination" of its *uberrimae fidei* claim and that Missouri precedent did not require returning the premiums prior to suing for a declaratory judgment. *Id.*

Morales-Vázquez contends that the insurer in *Cont'l Cement* acted in good faith, while QBE did not. He notes that QBE offered to return his premium when it rescinded his policy on August 10, 2015, but that he rejected this offer because accepting it would have precluded his breach of contract claim under the doctrine of accord and satisfaction. Dkt. 255 at 4–5. He argues this is evidence QBE knew it was required to return his premiums if it won a declaratory judgment. *Id.* However, by that same logic, Morales-Vázquez knew at least as of August 10, 2015 that he was entitled to a return of his insurance premiums in the event his policy was found void. Like the parties in *Cont'l Cement*, Morales-Vázquez could have argued this point at the summary judgment stage. The parties here first filed summary judgment motions in late 2016. Dkts. 70, 83. Despite a flurry of motions, a trial, and an appeal, Morales-Vázquez failed to raise this issue until February

2023, well after the final judgment in this case. Thus, all of Morales-Vázquez's cited authority on the issue of timeliness supports finding his claim for a return of his premiums is time-barred.

For the foregoing reasons, QBE's motion is **GRANTED** and Morales-Vázquez's motion is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of June, 2023.

*s/ Bruce J. McGiverin*
Bruce J. McGiverin
United States Magistrate Judge
